UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ELIZABETH G. QUATTRONE,

        Plaintiff,

    -vs-              08-CV-367-JTC

ERIE 2 CHAUTAUQUA-CATTARAUGUS BOARD
OF COOPERATIVE EDUCATIONAL SERVICES,
et al.,

        Defendants.

---

  Plaintiff Elizabeth Quattrone filed this action in May 2008 pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; 42 U.S.C. § 1983; and the New York Human Rights Law, N.Y. Exec. Law § 296, seeking money damages and reinstatement to her job with defendant Erie 2-Chautauqua-Cattaraugus Board of Educational Services ("BOCES" or "Erie 2 BOCES"). Also named as defendants are the Chautauqua Lake Central School District and the City of Dunkirk School District, two of the districts serviced by Erie 2 BOCES where plaintiff worked as a tenured elementary education teacher, as well as the individual board members of each of these entities. Pending for the court's determination is plaintiff's motion (Item 37) pursuant to Rule 15(a) of the Federal Rules of Civil Procedure for leave to amend the complaint to assert claims for violation of certain provisions of the New York Education Law and for breach of the collective bargaining agreement between Erie 2 BOCES and Tri-County BOCES Education Association ("TBEA"), plaintiff's union.

  For the reasons that follow, plaintiff's motion for leave to amend is granted.

**BACKGROUND**

As alleged in the original complaint, BOCES is a statutorily authorized cooperative association designed to provide shared educational services to component school districts within designated geographical areas–here, southern Erie, Cattaraugus, and Chautauqua Counties–referred to as the "supervisory district." *See* N.Y. Educ. Law § 1950. Plaintiff became certified in 1980 as an elementary education teacher in New York State and was appointed in 1984 to an "unclassified service" position within the Erie 2 BOCES system. In 1990, following a successful probationary period, she was granted tenure in the supervisory district (Item 1, ¶¶ 9-20).

During the 2002-2003 school year plaintiff was assigned by Erie 2 BOCES to teach elementary school students in Dunkirk City and Chautauqua Lake schools. Then, on July 1, 2003, plaintiff was notified by BOCES that she was being "excessed" because her teaching position had been consolidated with other elementary teaching positions within the two districts. She was placed on the preferred eligibility list, which she claims "entitl[ed] her to reinstatement in a similar, vacant position as a tenured elementary education teacher" should one become available. Item 1, ¶ 26 (citing N.Y. Educ. Law ¶¶ 3013(3) and 3014). She was 52 years old at the time she was excessed.

In September 2003, plaintiff commenced an administrative appeal with the New York State Education Department, which was denied by the Commissioner of Education. She sought review in New York State Supreme Court pursuant to C.P.L.R. Article 78, but this petition was dismissed, and the dismissal was affirmed on appeal. *See Quattrone v. New York State Educ. Dept.*, 37 A.D.3d 939, 829 N.Y.S.2d 288 (3d Dept. Feb. 8, 2007).

Plaintiff then brought this action,[1] claiming that defendants refused to recognize her statutory right to be recalled to her tenured position when jobs became available for which she was eligible, and hired younger, less qualified teachers to fill those positions, resulting in intentional discrimination with respect to the terms, conditions, and privileges of her employment on the basis of age, in violation of the ADEA and the corresponding provisions of New York State Human Rights Law. She also claims that defendants' refusal to recall her deprived her of a constitutionally protected property interest without due process (*see* Item 1, ¶¶ 52-53), and (broadly construed) that defendants violated her First Amendment rights by retaliating against her for (1) expressing matters of public concern during her administrative proceeding and Article 78 review (*see id.* at ¶ 38); (2) participating in union activities related to her claim that BOCES breached the applicable collective bargaining agreement (*see id.* at ¶¶ 41-42); and (3) refusing to sign a waiver and release of all claims against defendants as a condition precedent to reinstatement (*see id*. at ¶¶ 43-47), all actionable pursuant to 42 U.S.C. § 1983. The original complaint sets forth twelve separate causes of action seeking various forms of relief, including compensatory, statutory, punitive, and liquidated damages, along with "a mandatory injunction directing defendants to immediately reinstate her tenured employment . . . " and reasonable attorneys fees. *Id.* at pp. 20-21.

At the conclusion of discovery, the court approved the parties' joint proposal for filing and briefing of dispositive motions (Items 35 & 36). Prior to the agreed upon filing date,

---

[1] Plaintiff alleged in her original complaint that she has satisfied the administrative exhaustion requirements of the ADEA, as well as the notice of claim requirements of N.Y. Educ. Law § 3813, because sixty days had elapsed since she filed a charge of unlawful discrimination with the Equal Employment Opportunity Commission ("EEOC") (*see* Item 1, ¶ 8). Plaintiff has not submitted a copy of the EEOC charge, or any notice of right to sue letter, for inclusion as part of the record in this case.

however, plaintiff filed the present motion for leave to amend the complaint to plead two additional causes of action, and the court stayed the dispositive motion schedule until the motion to amend could be briefed and decided (Item 40).

In support of her request for leave to amend, plaintiff contends that discovery in the case, including the testimony of union president John LoBianco at his deposition in March 2010, revealed facts pertaining to a series of written agreements entered into between Erie 2 BOCES and Dunkirk to provide a universal pre-kindergarten program (the "UPK Program") which resulted in the creation of new pre-kindergarten teaching positions for which plaintiff was qualified, but which BOCES erroneously posted "outside the TBEA bargaining unit" (Item 44, ¶¶ 3, 4). Plaintiff contends that these previously undisclosed facts give rise to causes of action for (1) violation of New York Education Law Sections 3013 (Abolition of office or position), 3014 (Tenure: boards of cooperative educational services), and 3108 (Payment of salaries; refusal to tender release) (Item 37, Ex. 1, ¶ 95), and (2) breach of the collective bargaining agreement between BOCES and TBEA which was in effect from September 1, 2005 through August 31, 2009 (*id.* at ¶ 97).

Defendants object to the proposed amendment, claiming that they would be unfairly prejudiced if the court allows plaintiff to assert these additional causes of action at this stage of the litigation, and that in any event granting leave to amend would be futile because plaintiff failed to present her Education Law claims to the Commissioner in a timely manner, and failed to follow the mandatory grievance procedures of the collective bargaining agreement.

**DISCUSSION**

**I.      Fed. R. Civ. P. 15 (a)**

Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). On the other hand, a motion for leave to amend may be denied "if there is an 'apparent or declared reason–such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.' " *Dluhos v. Floating and Abandoned Vessel Known as "New York"*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *accord Abram v. City of Buffalo*, 2008 WL 5191675, at * 5 (W.D.N.Y. Dec. 10, 2008). Defendants assert that plaintiff unduly delayed seeking leave to amend, and that having to prepare for a defense against the newly asserted claims would cause undue prejudice. Defendants also contend that leave to amend would be futile because each of these proposed claims would be subject to dismissal for failure to exhaust available administrative remedies.

   **A.      Undue Delay and Prejudice**

Prejudice to the opposing party if the motion is granted has often been cited as "the most important reason for denying a motion to amend." *New Hampshire Ins. Co. v. Total Tool Supply, Inc.*, 621 F. Supp. 2d 121, 123 (S.D.N.Y. 2009) (citing cases; internal quotation marks and citations omitted). The courts consider several factors in determining prejudice, including whether assertion of the new claim or defense will unduly delay the

resolution of the dispute by substantially changing the theory of the case so as to require the opponent to expend significant additional resources to conduct discovery and prepare for trial. *See, e.g., Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 284 (2d Cir.), *cert. denied*, 531 U.S. 1035 (2000); *Abram*, 2008 WL 5191675, at * 5, *6. "The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994) (quoted in *Ballard v. Parkstone Energy, LLC*, 2008 WL 4298572, at * 5 (S.D.N.Y. Sept.19, 2008)).

In this case, defendants contend that allowing plaintiff to assert her new claims at this stage of the litigation, after the close of discovery and nearly two years after the action was filed, would require the expenditure of significant additional resources in order to properly prepare for trial. However, the courts have consistently held that the mere fact that discovery has been completed, or depositions may have to be retaken, does not mean that the defendants will suffer undue prejudice by allowing amendment of the pleadings to conform to facts discovered during the discovery process. *See, e.g., Hampton Bays Connections, Inc. v. Duffy*, 212 F.R.D. 119, 123-24 (E.D.N.Y. 2003) (amendment not prejudicial where discovery revealed additional factual support for previously dismissed claim); *Randolph-Rand Corp. of New York v. Tidy Handbags, Inc.*, 2001 WL 1286989, at *4 (S.D.N.Y. Oct. 24, 2001) (amendment adding parties allowed five years after commencement of action where defendant failed to show how additional discovery would substantially delay final disposition). Any additional depositions or other supplemental discovery deemed by the parties in this case to be necessary to explore facts regarding the newly asserted claims can be limited accordingly.

Defendants additionally argue that the prejudice attending plaintiff's delay in seeking leave to amend is amplified by the allegations on the face of the original complaint indicating that she was fully aware of the facts supporting her new claims at the time she filed this action. As stated in the *New Hampshire Ins. Co.* case:

> Delay in seeking leave to amend a pleading is generally not, in and of itself, a reason to deny a motion to amend. However, the Court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay . . . .

*New Hampshire Ins. Co.*, 621 F. Supp. 2d at 123-24 (internal quotation marks and citations omitted); *see also* 6 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1487 ("[A]lthough delay alone may not result in a denial of leave to amend, some courts have held that leave may be withheld if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for the failure to plead them at that time.").

In this regard, the central allegation of plaintiff's proposed amendment in this case is that BOCES erroneously posted the new teaching positions created for the UPK Program in the Dunkirk schools as "Adult Professional Program" positions falling outside of the bargaining unit, resulting both a violation of the cited provisions of the state Education Law and a breach of the terms of the collective bargaining agreement. According to defendants, the proposed amendment reflects plaintiff's admission that the actions regarding establishment and staffing of the UPK Program took place beginning "in or around 2005" (Item 37, Ex. 1, ¶ 50), and the allegations in the original complaint reflect her awareness of the facts supporting her new claims well before she commenced this action. For example, the original complaint contained the following allegations:

> In and around August, 2007, [plaintiff] duly notified defendants of her claim of rights to several specific elementary teaching vacancies at the Schools pursuant to New York Education Law § 3013(3), and requested that defendants perform their respective legal duties to reinstate her tenured employment retroactively from the first day of the term when vacancies first became available.

Item 1, ¶ 39.

> In and around October, 2007, [plaintiff] participated and assisted in an investigation conducted by local and regional representatives of her teacher's union, New York State United Teachers, in connection with her allegation that defendant BOCES had materially breached the parties' collective bargaining agreement, adversely affecting her employment rights.

*Id.* at ¶ 41.

Plaintiff does not specifically deny that these allegations reflect her knowledge of sufficient facts at the time she commenced the action in May 2008 to allow her to have formulated causes of action for violation of the Education Law and breach of the collective bargaining agreement. However, it is apparent to the court from its review of the parties' pleadings, proposals, and submissions now in the record that plaintiff's awareness of the allegedly erroneous posting of the UPK Program jobs was substantially enhanced by the testimony of Mr. LoBianco at his March 2010 deposition. *See, e.g.*, Item 45, pp. 3-5 (summarizing testimony). Viewed in this light, the court accepts plaintiff's representation that her request for leave to amend the pleadings to assert specific legal grounds for statutory or contractual relief regarding these facts was not unduly delayed.

In addition, as reflected in the minutes of the several status conferences held with counsel during the course of discovery in this action, as well as in the court's orders dealing with the parties' numerous requests for extension of various time periods, the court is fully

familiar with the sources of delay in the progress of this litigation, and declines the invitation to ascribe the cause fully to one party or another.

Based on these circumstances, defendants have failed to demonstrate that amendment of the pleadings to conform to the evidence would cause them undue prejudice.

**B.     Futility**

As the Second Circuit has long recognized, it is not an abuse of discretion for the district court to deny leave to amend where it appears from the face of the proposed pleading that granting leave to amend would be futile, or "unlikely to be productive . . . ." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citing *Foman v. Davis*, 371 U.S. at 182; other citations omitted).  The determination whether a proposed amendment is futile is made under the same standard used to determine whether a claim would be subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  *See Bowers v. County of Schuyler*, 2009 WL 857508, at *2 (W.D.N.Y. Mar. 26, 2009) (citing *Hampton Bays Connections*, 212 F.R.D. at 119). To withstand a Rule 12(b)(6) motion to dismiss, the claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, ___U.S.___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Defendants contend that neither proposed amendment can withstand Rule 12(b)(6) analysis.  Specifically, defendants contend that plaintiff cannot maintain her claim for violation of the state Education Law because she failed to comply with the mandatory

notice of claim and statute of limitations requirements of requirement of Education Law Section 3813, and that she cannot maintain her claim for breach of the collective bargaining agreement because she failed to follow the mandatory contractual dispute resolution procedures set forth in that agreement. Each of these issues is addressed in turn.

### 1. Notice of Claim and Statute of Limitations

Education Law Section 3813 states, in relevant part:

> No action or special proceeding, for any cause whatever . . . involving the rights or interests of any district or . . . school shall be prosecuted or maintained against any school district, board of education, board of cooperative educational services, school . . . or any officer of a school district, board of education, board of cooperative educational services, or school . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

N.Y. Educ. Law § 3813(1). It is well settled that, subject to limited exceptions, compliance with this requirement is a statutory condition precedent to commencement of any type of legal action against a school board, its members, or employees, *Parochial Bus Sys., Inc. v. Board of Educ. of the City of New York*, 470 N.Y.S.2d 564, 568 (1983), and that "failure to comply is a fatal defect mandating dismissal of the action." *Angarano v. Harrison Cent. Sch. Dist.*, 2007 WL 102348, at *4 (N.Y. County 2007), *quoted in Carlson v. Geneva City School Dist.*, 679 F. Supp. 2d 355, 366 (W.D.N.Y. 2010).

Plaintiff cites several cases holding that the notice of claim requirement of Section 3813 is not applicable to a claim seeking to enforce a teachers' tenure rights, because those rights are considered a matter in the public interest. *See, e.g., Kight v. Wyandanch Union Free School Dist.*, 84 A.D.2d 749, 443 N.Y.S.2d 751 (2d Dept. 1981), *aff'd*, 56 N.Y.2d 606 (1982); *DePaoli v. Board of Educ., Somers Cent. School Dist.*, 92 A.D.2d 894, 459 N.Y.S.2d 883, 884 (2d Dept. 1983) (citing cases). The court's review of this and other pertinent authority reveals that the "public interest exception" to the notice of claim requirement is routinely applied in actions, such as this one, brought by tenured teachers seeking to enforce their statutory rights under the New York Education Law.

Nevertheless, while plaintiff's Education Law claim is not subject to dismissal for failure to comply with the notice of claim requirement of Section 3813(1), it remains subject to the statute of limitations of Section 3813(2-b), which provides that "no action or special proceeding shall be commenced against any entity specified in subdivision one of this section more than one year after the cause of action arose . . . ." N.Y. Educ. Law § 3813(2-b); *see Board of Educ. of Katonah-Lewisboro School Dist. v. Board of Educ. of Carmel Cent. School Dist.*, 174 A.D.2d 704, 705, 571 N.Y.S.2d 333, 334 (2d Dept. 1991) (public interest exception to notice of claim requirement does not permit commencement of actions against school district after expiration of one-year statute of limitations provided in § 3813(2-b)). Based on this court's reading of the allegations in the amended complaint, and although not presenting a picture of factual clarity, plaintiff's claim for violation of the cited provisions of the Education Law would have accrued at some point in late 2007, when plaintiff alleges she became aware of her tenure rights regarding the positions created by the UPK Program, and when defendants demanded that she sign a general release as a

condition precedent to reinstatement. Accordingly, plaintiff's assertion of this claim by way of her motion to amend, filed in April 2010, is barred by the one year statute of limitations provided in Section 3813(2-b), unless that claim "relates back" to the date the original complaint was filed. *See, e.g., Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35 (2d Cir. 1996) (because limitations period expired before plaintiff filed motion to amend, amendment may be allowed only if it would relate back to the date original complaint was filed) (internal citation omitted).

In this regard, Rule 15(c) of the Federal Rules of Civil Procedure provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The central inquiry under this Rule "is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation marks and citation omitted). Thus, new allegations in the amended pleading will relate back if they simply amplify the facts alleged in the original pleading or set forth those facts with greater specificity. *See, e.g., In re Chaus Securities Litigation*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992). "Provided the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the original pleading, even where the revised pleading contains legal theories not included in the original." *White v. White Rose Food*, 128 F.3d 110, 116 (2d Cir. 1997).

When viewed under these standards, the allegations in the amended complaint at least plausibly attempt to assert a claim for relief under New York State Education Law arising out of the same conduct, transactions, or occurrences set out in the original pleading. For example, in her original complaint plaintiff clearly alleged her entitlement to preferential reinstatement in the event of abolishment of her position, as required under Section 3013 of the Education Law (*see* Item 1, ¶¶ 25-27, 39); enforcement of her tenure rights under Section 3014 (*id.* at ¶¶ 22, 26-27); and defendants' violation of the prohibition against requiring a general release or waiver of claims as a condition precedent to reinstatement, set forth in Section 3018 (*id.* at ¶¶ 43-47). Her proposed amendment seeks to assert those specific statutory provisions as additional grounds for relief based upon those same facts, somewhat amplified by discovery indicating that defendants failed to properly post additional positions for which she should have been considered under the rights and prohibitions outlined in those statutes. Under these circumstances, this court is of the opinion that plaintiff's newly asserted Education Law claims are plausibly stated in the proposed amended complaint in a manner sufficient to relate back to the date of the original pleading so as to avoid the statute's one-year time bar.

Accordingly, the court finds that granting leave to amend to assert a claim for violation of Sections 3013, 3014, and 3108 of the New York Education Law would not be futile.

### 2. Failure to Exhaust Collective Bargaining Remedies

Defendants also contend that it would be futile to grant leave to amend in order to allow plaintiff to assert a claim that BOCES breached the collective bargaining agreement

by improperly posting the positions developed under the UPK program because plaintiff failed to pursue the grievance and arbitration procedures provided in that agreement. Generally, when the collective bargaining agreement between the employer and the union contains bargained-for grievance procedures, an employee subject to the agreement may not sue the employer directly for breach of the agreement's provision but must proceed, through the union, in accordance with the grievance procedures set forth in the contract. *Matter of Board of Educ., Commack Union Free School Dist. v. Ambach*, 70 N.Y.2d 501, 508 (1987), *cert. denied sub nom. Margolin v. Board of Educ.*, 485 U.S. 1034 (1988); *see also Cummings v. Board of Educ. of Sharon Springs Cent. School Dist.*, 60 A.D.3d 1138, 1139-40, 874 N.Y.S.2d 614, 615-16 (3d Dept. 2009). The employee may sue the employer directly for breach of the collective bargaining agreement only if the agreement grants the employee that right, or if the employee can show that the union breached its duty of fair representation. *Commack Union*, 70 N.Y.2d at 508; *see also Tomlinson v. Board of Educ. of Lakeland Cent. School Dist. of Shrub Oak*, 223 A.D.2d 636, 637, 636 N.Y.S.2d 855, 856 (2d Dept. 1996). In order to establish a breach of the duty of fair representation, the employee must show that the union's conduct was arbitrary, discriminatory, or in bad faith. *See Lundgren v. Kaufman Astoria Studios, Inc.*, 261 A.D.2d 513, 514, 690 N.Y.S.2d 609, 610 (2d Dept. 1999).

Defendants have provided a copy of Article 4 of the pertinent collective bargaining agreement, which sets forth a detailed three-stage grievance procedure to be followed in presenting a claim for violation of the collective bargaining agreement's provisions. Plaintiff never availed herself of these procedures. Rather, she contends that she should be

allowed to pursue her claim directly against BOCES in this court because Mr. LoBianco's deposition testimony revealed additional facts regarding the union's active involvement in the negotiation of the "coercive and unlawful" waiver and release of legal rights contained in the proposed settlement agreement (Quattrone Aff., Item 44, ¶ 13). According to plaintiff, when considered along with the union's overall inability to enforce her tenure rights, as well as its recommendation that she accept the waiver in exchange for employment to which she was legally entitled, these newly discovered facts provide a sufficient basis for finding that the union breached its duty of fair representation so as to allow her to pursue her claim against BOCES for breach of the collective bargaining agreement directly in this court.

Assuming the truth of these representations (which the court must do in determining whether to grant leave to amend), the court finds that plaintiff has at least marginally set forth sufficient facts to state a claim for breach of the collective bargaining agreement "that is plausible on its face." *Twombly*, 550 U.S. at 570. Defendants' contention that this claim is foreclosed by plaintiff's failure to exhaust the contractual grievance procedures is, in the court's view, better suited for consideration in the context of a more fully developed summary judgment motion rather than at the pleading stage.

Accordingly, the court finds that granting plaintiff leave to amend the complaint to assert a claim for breach of the collective bargaining agreement would not be futile.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for leave to amend the complaint is granted. Plaintiff shall serve and file a clean copy of the amended complaint, in the form

of the proposed amendment attached as Exhibit 1 to Item 37, within twenty days after the date of entry of this order, and defendants shall make a response within ten days after service of the amended pleading, in accordance with the requirements of the Federal and Local Rules of Civil Procedure and the matters set forth herein.

A telephone conference is scheduled with the court for March 7, 2011, at 2:00 p.m., to discuss a schedule for further proceedings.

So ordered.

                                      \s\ John T. Curtin
                                      JOHN T. CURTIN
                              United States District Judge

Dated: 1/27              , 2011
p:\pending\2008\08-367.jan26.2011