UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIZABETH G. QUATTRONE,

                                    Plaintiff,

                -vs-

ERIE 2 CHAUTAUQUA-CATTARAUGUS BOARD
OF COOPERATIVE EDUCATIONAL SERVICES,
together with Board of Cooperative Educational Services
Board Members Linda Hoffman, Ronald Catalano,
Jerome Brown, Thomas DeJoe, Anne Ehrilich,
R. Michael Krause, Joanne Martin, Anita Ray, Nancy
Renckens, Susan Russo, Lorie Sabo and David Van
Wormer, in their individual and official capacities,

                                                                              08-CV-367-JTC

CHAUTAUQUA LAKE CENTRAL SCHOOL DISTRICT,
together with Board of Education members Randy Henderson,
Pam Perdue, Jay Baker, Deborah Cross-Fuller, David Forster,
Timothy Hull and Kim Weborg-Benson, in their individual
and official capacities,

and

DUNKIRK CITY SCHOOL DISTRICT,
together with Board of Education members Kenneth
Kozlowski, Nancy Renckens, Bridget Majka, Linda Guy,
Tommy Roque and Gregory Sek, in their individual and
official capacities,

                                    Defendants.
_____

        Plaintiff Elizabeth Quattrone commenced this action on May, 20, 2008, against Erie

2-Chautauqua-Cattaraugus Board of Cooperative Educational Services ("BOCES" or "Erie

2 BOCES"), and the Chautauqua Lake Central and City of Dunkirk School Districts, two of

the districts serviced by Erie 2 BOCES where plaintiff worked as a tenured elementary

education teacher from 1984 through the 2002-03 school year.  Also named as defendants

are several individuals who served as school board members for each of these entities. The complaint as amended (Item 54) sets forth fourteen causes of action seeking reinstatement and money damages pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* (Causes of Action One through Six); New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296 (Causes of Action Seven and Eight);  42 U.S.C. § 1983 (Causes of Action Nine through Twelve); New York Education Law §§ 3013, 3014, and 3018 (Cause of Action Thirteen); and the collective bargaining agreement between Erie 2 BOCES and plaintiff's teachers' union, the Tri-County BOCES Education Association ("TCBEA") (Cause of Action Fourteen).

Upon completion of discovery, defendants moved for summary judgment pursuant to Fed. R. Civ. P. 56 to dismiss the amended complaint in its entirety.  Item 62.  For the reasons that follow, this motion is granted.

## BACKGROUND

Plaintiff became certified in New York State in 1980 as an elementary education teacher (nursery school through grade six), and was appointed in 1984 to an "unclassified service" position within the Erie 2 BOCES[1] system.   In 1990, following a successful probationary period, plaintiff was granted tenure in the "Elementary tenure area (Gifted and Talented)" for the supervisory district of southern Erie, Cattaraugus, and Chautauqua Counties.  Item 62-4 at 45.

_____

[1] As explained in the pleadings, and as discussed in the court's prior decision and order granting leave to amend, BOCES is a statutorily authorized cooperative association designed to provide shared educational services to component school districts within designated geographical areas, referred to as "supervisory districts."  *See Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Co-op. Educ. Services*, 2011 WL 294496, at *1 (W.D.N.Y. Jan. 27, 2011) (citing N.Y. Educ. Law § 1950).

During the 2002-03 school year, plaintiff was assigned to teach in the Chautauqua Lake Elementary, Dunkirk Middle, and Cassadaga Valley Elementary Schools.   On June 17, 2003, Erie 2 BOCES' Director of Human Resources Cynthia L. Kolenko sent plaintiff a letter stating as follows:

> This letter is to advise you that [Erie 2 BOCES], at its regular meeting held on June 11, 2003, acting upon the recommendation of the District Superintendent, excessed [*i.e.*, discontinued] your appointment effective July 1, 2003 in the Elementary Education (gifted/talented) Tenure Area. Your name will be placed on the preferred eligibility list in accordance with the law.

Item 62-4 at 47.  Plaintiff was 52 years of age at the time she was excessed.

In September 2003, plaintiff commenced an administrative appeal by verified petition filed with the New York State Education Department, claiming a legal right to employment with the Dunkirk and/or Chautauqua Lake school districts pursuant to New York Education Law § 3014-b[2] on the theory that the functions of the gifted and talented program in the Elementary Tenure area had been taken over by those districts.  *See* Item 68-1 at 5-23.  In a decision dated November 24, 2004, the Commissioner of Education dismissed the appeal, finding that plaintiff had failed to establish that either Dunkirk or Chautauqua Lake had taken over the functions of the BOCES gifted and talented program

---

[2]Section 3014-b provides, in pertinent part:

In any case in which a school district duly takes over the operation of a program formerly provided by a board of cooperative educational services, each teacher, teaching assistant and teacher aide employed in such a program by such a board of cooperative educational services at the time of such takeover by the school district shall be considered an employee of such school district, with the same tenure or civil service status he maintained in such board of cooperative educational services.

N.Y. Educ. Law § 3014-b(1).

so as to entitle plaintiff to a teaching position or to otherwise confer any employment rights under Education Law § 3014-b.   Item 68-2 at 2-6.

Plaintiff timely commenced a proceeding in New York State Supreme Court, Albany County, pursuant to N.Y.C.P.L.R. Article 78, seeking review of the Commissioner's decision.  *See id.* at 8-25.  On November 21, 2005, State Supreme Court Justice Joseph S. Teresi issued a decision and order finding that, upon proper evaluation of the pertinent factors, the Commissioner had a rational basis for concluding that neither school district had taken over the functions of the BOCES program within the meaning of § 3014-b so as to give rise to an obligation to hire plaintiff following discontinuation of her employment with BOCES.  *Id.* at 22-24.

Plaintiff appealed, and on February 8, 2007, the Appellate Division, Third Department issued a decision affirming Justice Teresi's ruling.  *Quattrone v. New York State Educ. Dept.*, 829 N.Y.S.2d 288 (App. Div. 2007).   The appellate court found that:

> Where a component school district withdraws its students from a BOCES program and establishes an equivalent program of its own, it has taken over the program within the contemplation of Education Law § 3014-b.  In making a determination of whether such a takeover has occurred, numerous factors are to be considered, including a school district's reason for withdrawing from a BOCES program, a comparison of the two programs, the reason that a BOCES teacher was excessed and the rationale behind any new probationary hires by the school district.  Upon our examination of these factors, we conclude that petitioner failed to establish that a takeover occurred by either Chautauqua Lake or Dunkirk City.
>
> For example, with respect to Chautauqua Lake, while it did develop an enrichment program following its discontinuance of the BOCES gifted and talented program, the two programs were simply not equivalent. The newly-established enrichment program was more extensive in that it was available to all students, not just those identified as "gifted," took into account numerous factors in determining which students would be considered for it and offered flexibility in terms of scheduling. Moreover, unlike the BOCES program, the enrichment program paralleled general classroom instruction

and featured field trips and classroom presentation components.  As to Dunkirk City, following its discontinuance of the BOCES gifted and talented program, it had no program whatsoever earmarked for gifted and talented education but rather embedded such education into their general curriculum and within the regular classroom setting.

It was further established that neither school district hired a new teacher to replace petitioner following discontinuance of their BOCES contracts.  In particular, Chautauqua Lake did not hire a new person to teach the enrichment program; rather, it added this program to the duties of an existing teacher.  Moreover, Chautauqua Lake successfully established that it withdrew from the BOCES program because it was not pleased with certain aspects of it, while Dunkirk City successfully established that it discontinued the program due to the high cost of maintaining it.  In short, upon our review of the record, there was no takeover of the BOCES program and Supreme Court therefore properly dismissed this proceeding.

*Id.* at 290-91 (citing *Matter of Cooper v. Board of Educ. of Shenendehowa Cent. School Dist.*, 615 N.Y.S.2d 135 (App. Div. 1994); other citations, quotation marks, and alterations omitted).

Meanwhile, in September 2006, Erie 2 BOCES and the Dunkirk Public School District entered into a Memorandum of Agreement to establish a Universal Pre-Kindergarten ("UPK") program in the City of Dunkirk schools, under which Erie 2 BOCES agreed to provide two full-time certified early childhood instructors "[t]o facilitate the transition of children in early childhood programs to the public school system."  Item 63-1 at 2.  These positions were posted as follows:

**TWO (2) ADULT PROGRAM PROFESSIONALS**
**Family Literacy Educators**
**Boorady Adult Learning Center, Dunkirk, NY**
**Temporary Appointments**
**September 1, 2006 - June 30, 2007**

**Qualifications**
**Required:**      *      New York State teaching certification

      *      Bachelor's Degree in educational field, Masters' Degree preferred
      *      Good communication skills
      *      Must be available to work evening and weekend hours periodically
      *      Knowledge of Adult Education, Early Childhood and Parenting Education

**Salary:**    Per Employment Policy

*Id.* at 7.

Upon learning of the existence of this program "[i]n or around May, 2007" (Item 73 at 11), plaintiff contacted TCBEA President John LoBianco to inquire about her seniority rights to one of the UPK teaching positions. *See* Items 73-26; 62-4 at 51. As reflected by a series of e-mails in September and October 2007, Mr. LoBianco contacted Erie 2 BOCES Superintendent Robert Guiffreda and Assistant Superintendent Colleen Taggerty, and obtained and forwarded to plaintiff information about the UPK program and her Preferred Eligibility List ("PEL") rights with BOCES. *See* Item 62-4 at 53-57, 61-71; *see also* Items 73-15; 73-16; 73-19. Mr. LoBianco also contacted the New York State United Teachers Union ("NYSUT") for guidance; and on October 26, 2007, plaintiff met with Mr. LoBianco and NYSUT labor relations specialist Donna Fegetalli at the Erie 2 BOCES office in the Carrier Center to discuss plaintiff's concerns about her PEL rights to the UPK position. *See* Item 63-2 at 75-79. Ms. Taggerty also briefly attended the meeting. *Id.* at 158.

Prior to this meeting, on August 29, 2007, plaintiff's then-legal counsel Andrew Fleming sent an e-mail to Karl Kristoff, legal counsel for Erie 2 BOCES, advising that plaintiff was prepared to file a new Article 78 petition in state court to pursue her

employment rights in the component school districts "due to her placement on certain Preferred Eligibility Lists." Item 68-3 at 7. Attached to the e-mail was a draft petition which contained an allegation that the Appellate Division had "necessarily resolved the issue of [plaintiff]'s preferred eligibility status" by determining "that the reason [plaintiff] was excessed from tenured employment entitled her to be placed on each district's preferred eligibility list as of July 1, 2003, the date her recall rights vested pursuant to the state tenure system." Item 68-3 at 12, ¶ 19. Mr. Fleming requested that counsel review the matter and discuss the possibility of alternative resolution prior to proceeding with further litigation. *Id.* at 7. In response, Mr. Kristoff asked Mr. Fleming for clarification as to the source of authority for the allegation that plaintiff was entitled to placement on each district's eligibility list, *id.* at 17, but the record reflects no further clarification from Mr. Fleming in this regard.

Following the October 26, 2007 meeting at the Carrier Center, and as a result of further discussions between Erie 2 BOCES and the TCBEA regarding a mutually agreeable resolution to plaintiff's claim of entitlement to the UPK position, Mr. Kristoff prepared a proposed "Settlement Agreement Release and Waiver" which he e-mailed to Mr. Fleming on November 13, 2007. The proposal offered plaintiff an appointment to the UPK position effective September 1, 2007, with retroactive placement on BOCES' active payroll as of July 1, 2007, and payment of health insurance premiums for up to 120 days in the event the UPK position was later abolished. In return, plaintiff was to agree "that she will not initiate any type of legal action of any nature whatsoever, whether judicial (civil or criminal), administrative, contractual or otherwise, based upon occurrences taking place before the

execution of this Agreement," against Erie 2 BOCES, the Chautauqua Lake or Dunkirk school districts, or any board members or employees.  Item 68-3 at 22.

Plaintiff did not sign the Settlement Agreement, nor did she accept subsequent offers made in December 2007 and June 2008 for a pre-school teaching position at the Dunkirk Learning Center.  These offers were not conditioned on any release of claims or waiver of rights.  *See* Item 63-1 at 16-18, 23-25.  Instead, on or about January 28, 2008, plaintiff filed charges with Equal Employment Opportunity Commission ("EEOC") and New York State Division of Human Rights ("NYSDHR") against Erie 2 BOCES and the Chautauqua Lake and Dunkirk school districts, in which she alleged that each entity failed to recall her to her tenured employment as a shared elementary teacher, and instead hired younger less-qualified individuals, "in willful violation of the Age Discrimination in Employment Act."  Item 62-2 at 2-4.  On June 23, 2008, EEOC issued a "Dismissal and Notice of Rights" with respect to each charge, indicating that the agency's investigation of the charges had been closed due to the filing of this lawsuit in May 2008.  *Id.* at 6-8.

In her amended complaint in this action (Item 54), plaintiff claims that notwithstanding her placement on the Preferred Eligibility Lists of BOCES and the component school districts, defendants refused to recognize her statutory right to be recalled to her tenured position when jobs became available and instead hired younger, less-qualified teachers to fill those positions, resulting in intentional discrimination with respect to the terms, conditions, and privileges of her employment on the basis of age, in violation of the ADEA and the corresponding provisions of New York Human Rights Law. She also claims that defendants deprived her of a constitutionally protected property interest in tenured employment without due process, and violated her First Amendment

rights by retaliating against her for expressing matters of public concern, all actionable pursuant to 42 U.S.C. § 1983. Plaintiff further alleges that defendants filled the positions created by the UPK program with temporary appointments and teachers with less seniority, in violation of New York Education Law, and posted the UPK positions outside the TCBEA bargaining unit of which plaintiff was a member, in breach of the collective bargaining agreement.

Defendants move for summary judgment dismissing the amended complaint based on the following grounds:

1.     Failure to state a claim premised on plaintiff's alleged placement on the PELs of the Chautauqua Lake and Dunkirk school districts.

2.     Failure to establish a *prima facie* case of age discrimination or retaliation.

3.     Failure to establish an actionable § 1983 claim for deprivation of due process or rights under the First Amendment.

4.     Failure to establish a claim for breach of the collective bargaining agreement.

Each of these grounds is discussed in turn below.

## DISCUSSION

### I.     Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . ," and facts are "material" if they "might affect the outcome of the

suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the burden of showing the absence of a genuine issue of material fact, and the proffered evidence must be viewed in the light most favorable to the nonmovant.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If the movant meets this burden, the burden then shifts to the nonmovant to come forward with evidence "sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

Summary judgment is proper "[o]nly when reasonable minds could not differ as to the import of evidence . . . ." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).  The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. " *Anderson*, 477 U.S. at 249.  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).

## II.     State Education Law Claims Based on Placement on the PELs of the Dunkirk and Chautauqua Lake School Districts

Plaintiff's state education law claims, encompassed by Cause of Action Thirteen of the amended complaint, are based on the premise that when her position was excessed by BOCES in June 2003 as a result of the elimination of the gifted and talented programs in the component school districts, plaintiff was automatically placed on each district's

Preferred Eligibility List, thereby entitling her to reinstatement under the tenure provisions set forth in N.Y. Educ. Law § 3013(3)(a).  This section provides:

> If an office or position is abolished or if it is consolidated with another position without creating a new position, the person filling such position at the time of its abolishment or consolidation shall be placed upon a preferred eligible list of candidates for appointment to a vacancy that then exists or that may thereafter occur in an office or position similar to the one which such person filled without reduction in salary or increment, provided the record of such person has been one of faithful, competent service in the office or position he or she has filled.  The persons on such preferred list shall be reinstated or appointed to such vacancies in such corresponding or similar positions in the order of their length of service in the system at any time within seven years from the date of abolition or consolidation of such office or position.

N.Y. Educ. Law § 3013(3)(a).

In support of this argument, plaintiff relies on the following statement in the Appellate Division's opinion affirming the lower court's dismissal of plaintiff's Article 78 petition:

> In July 2003, petitioner, a tenured teacher employed by respondent Erie 2 Chautauqua-Cattaraugus Board of Cooperative Educational Services (hereinafter BOCES) who was assigned to teach gifted and talented students at various component school districts, was notified that her appointment was being excessed due to lack of interest in the gifted and talented program. Chautauqua Lake Central School District and Dunkirk City School District were two such component school districts who cancelled their BOCES contracts for gifted and talented services. **Petitioner was then placed on a preferred eligibility list at each of these districts but was never thereafter contacted by either for employment.**

*Quattrone*, 829 N.Y.S.2d at 289-90 (emphasis supplied).  According to plaintiff, this finding by the Appellate Division confirms her preferred eligibility rights in the Chautauqua Lake and Dunkirk school districts, rights which were violated when those districts hired younger, less senior teachers to fill positions for which plaintiff was qualified.

-11-

This contention must be rejected.  First and foremost, considering the totality of the facts and circumstances presented on the summary judgment record in this case, this court's reading of the Appellate Division's February 8, 2007 decision in *Quattrone* makes it clear that the above-referenced statement was made as part of that court's summary of the factual and procedural history underlying plaintiff's Article 78 petition, not as a ruling on plaintiff's substantive employment rights under state education law.  As conclusively determined by the Commissioner of Education, the State Supreme Court, and the Appellate Division, in order for plaintiff to have been considered an employee of either the Chautauqua Lake or Dunkirk school district with the same tenure status she maintained in BOCES, the component district must have "taken over" the functions of the program served by plaintiff as a BOCES employee "within the contemplation of section 3014-b of the Education Law."  *Acinapuro v. Board of Cooperative Educational Services of Nassau County*, 455 N.Y.S.2d 275, 279 (App. Div. 1982).  This issue was fully litigated and decided against plaintiff at every available level of state administrative and judicial review.  Viewed in this light, the state appellate court's discussion in its background summary regarding plaintiff's placement on the component districts' PELs is entitled to no precedential effect.

Furthermore, the prior administrative proceedings and state court Article 78 litigation resulted in a final determination that plaintiff had no legal right to employment in either the Chautauqua Lake or Dunkirk school district.  Under the well recognized equitable doctrine of collateral estoppel, plaintiff is precluded from relitigating that same issue in this action.  Collateral estoppel, also referred to as "issue preclusion," precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against the party or those in privity.  *Buechel v. Bain*, 97 N.Y.2d 295, 303 (2001);

*Khandhar v. Elfenbein*, 943 F.2d 244, 247-48 (2d Cir. 1991).  Collateral estoppel has two requirements: (1) "there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action;" and (2) "there must have been a full and fair opportunity to contest the decision now said to be controlling."  *Beuchel*, 97 N.Y.2d at 303-04; *Khandhar*, 943 F.2d at 247; *see also Weizmann Institute of Science v. Neschis*, 421 F. Supp. 2d 654, 675 (S.D.N.Y. 2005).  Both of these requirements are met here.

There can be no question that the issue of plaintiff's right to be placed on the preferred eligibility lists for Chautauqua Lake and Dunkirk under the requirements of New York State Education Law was necessarily decided in the state administrative proceedings and Article 78 litigation.  As described in extensive detail by Karl Kristoff, defendants' legal counsel in the prior action, the central position advanced by plaintiff in the administrative and state court proceedings was that she had worked for BOCES as a teacher in its gifted and talented program, as implemented in the Chautauqua Lake and Dunkirk school districts; her position was discontinued by BOCES in June 2003; and she was not reinstated to an equivalent position in either of the component districts, in violation of the state education law.  *See* Kristoff Decl., Item 68, ¶¶ 5-16 and Exhs. A-E attached thereto. The legal issue regarding the school districts' obligations under the state education law to reinstate plaintiff was considered by the Commissioner of Education, as well as by the state courts on Article 78 and appellate review, and was resolved against plaintiff at every turn.  This issue is identical to the legal issues raised by virtue of the Thirteenth Cause of Action in the amended complaint in this action regarding the alleged refusal by defendants to recognize plaintiff's rights under the state education law to be recalled to her tenured

position when jobs became available in the component districts.  Although the issue is framed here in terms of rights allegedly arising under different sections of the education law, its resolution unquestionably turns on a determination as to whether a component school district which has withdrawn its students from a BOCES program has "taken over" the program within the contemplation of Education Law § 3014-b.   Plaintiff was represented by counsel in the presentation and appeal of her Article 78 petition in the state courts, and the record reflects that she was at all times afforded a full and fair opportunity for review.   Considering "fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results," *Beuchel*, 97 N.Y.2d at 304, this court must give the state court judgment against plaintiff "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

Accordingly, plaintiff is collaterally estopped from relitigating the issue of her employment rights in the Chautauqua Lake and Dunkirk school districts under New York education law for a fourth time in this action.  Defendants are therefore entitled to summary judgment as a matter of law dismissing Cause of Action Thirteen.

## III.   Age Discrimination

In Causes of Action One through Eight of her amended complaint, plaintiff alleges age discrimination in violation of the ADEA and NYSHRL.[3]   Where, as here, there is no

---

[3]The law governing NYSHRL claims has been held to be identical to that governing claims made under the ADEA.  *See Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 n.6 (2d Cir. 2010).

direct evidence of discrimination, courts called upon to analyze ADEA claims utilize the "burden shifting" framework first enunciated by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802–804 (1973), and later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–253 (1981), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–511 (1993).  *See Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 105-06 (2d Cir. 2010).   Under this framework, the plaintiff must first establish a *prima facie* case of discrimination by showing: "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107.

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for [the adverse act]." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted).  The employer's burden of production in this regard is, likewise, "not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory." *Hirschberg v. Bank of America, N.A.*, 754 F. Supp. 2d 500, 511 (E.D.N.Y. 2010) (citing *Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 111 (W.D.N.Y. 2002), *aff'd*, 99 Fed.Appx. 350 (2d Cir. 2004)).

Should the employer satisfy its burden, the *McDonnell Douglas* burden-shifting framework disappears, leaving the sole remaining issue of "discrimination *vel non*." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).  At this stage of the analysis, the court must determine, "by looking at the evidence [the plaintiff] has

proffered and the counter-evidence [the defendant] has presented, whether [the plaintiff] has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her age was a 'but for' cause" of the adverse employment action. *Gorzynski*, 596 F.3d at 107 (quoting *Gross v. FBL Financial Services, Inc.*, 557 U.S. ___, ___,129 S. Ct. 2343, 2351 (2009)).

There is no question in this case that plaintiff was within the age group protected by the ADEA at all times pertinent to the issues raised by this lawsuit.  With regard to the remaining elements, plaintiff contends that employment records obtained during discovery show that, between 2005 and 2008, Erie 2 BOCES and the Dunkirk and Chautauqua Lake school districts have filled vacant, substantially similar elementary teaching positions with younger and less-qualified teachers, despite plaintiff's Preferred Eligibility List seniority. However, even if this could be considered a sufficient proffer to establish an inference of discrimination, plaintiff cannot show that she was denied any position by the Dunkirk and Chautauqua Lake defendants for which she was qualified, or that she experienced any other adverse employment action at the hands of those defendants.  As discussed above, plaintiff was never placed on a Preferred Eligibility List at either of the component school districts, and–notwithstanding her erroneous reading of the Appellate Division's opinion regarding her rights under the state education law–she therefore had no statutory entitlement to a vacant job position in either of those districts.  Indeed, plaintiff does not allege, nor does the proffered evidence suggest, that she ever applied for a specific job with Dunkirk or Chautauqua Lake and was turned down.

In any event, the ADEA makes it "unlawful for an *employer* ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect

to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1) (emphasis added).  Plaintiff was employed by Erie 2 BOCES, not by either Chautauqua Lake or Dunkirk.  *Cf. Bochman v. Town of Cheektowaga*, 773 N.Y.S.2d 840, 843-44 (N.Y. Sup. Ct. 2004) (BOCES not engaged in joint venture with component school district so as to render board employee an employee of school district for purpose of Workers' Compensation Law).  Furthermore, as discussed above, the state court's determination that plaintiff had no substantive employment rights in either of the component districts is entitled to collateral estoppel effect here. Accordingly, there is no basis for a reasonable jury to find that Chautauqua Lake or Dunkirk was plaintiff's "employer" subject to liability under section 623(a)(1) of the ADEA.

With regard to plaintiff's age discrimination claim against Erie 2 BOCES, the only adverse employment action complained of relates to plaintiff's allegation that BOCES failed to offer her a position with the UPK program, first posted in September 2006.  However, as discussed above, BOCES did in fact offer plaintiff the UPK position on at least three different occasions in November 2007, December 2007, June 2008, and plaintiff rejected the offer each time.  The courts have "decline[d] to extend the definition of an adverse employment action to include job offers.  There is no cognizable cause of action based on a job applicant's rejection of a job offer she finds undesirable." *Lula v. Network Appliance*, 255 Fed.Appx. 610, 612 (3d Cir. 2007).

Even if the court should consider the circumstances of BOCES' failure to hire plaintiff for the UPK position as sufficient *prima facie* evidence of an adverse employment action, plaintiff has failed to meet her burden of production with respect to the final *prima*

*facie* element– that the action occurred under circumstances giving rise to an inference of discrimination.  In this regard, plaintiff contends that the initial posting of the UPK as a "Family Literacy Educator" position within BOCES' Division of Adult & Community Education– outside plaintiff's bargaining unit– raises such an inference.  However, plaintiff has submitted no legal authority to support this somewhat strained argument, nor has she produced any evidence, beyond her own conjecture, that might be relied upon by a reasonable trier of fact to find that the initial posting of the UPK position was somehow discriminatory or improper under the collective bargaining agreement.  In any event, it is undisputed that the UPK position was eventually posted within plaintiff's bargaining unit, and was offered to plaintiff three times, but she declined the offer each time.

Finally, the ADEA provides no basis for imposing individual liability.  *See Mabry v. Neighborhood Defender Service*, 769 F. Supp. 2d 381, 391 (S.D.N.Y. 2011) (citing *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (finding that individual defendants may not be personally liable under Title VII); *see also Garibaldi v. Anixter, Inc.*, 407 F. Supp. 2d 449, 451 (W.D.N.Y. 2006) ("[T]here is no individual liability under any of the federal anti-discrimination statutes, including Title VII, the ADA, and the ADEA.").[4]

---

[4]The court recognizes that individual liability may lie under the NYHRL where the individual actually participates in the conduct giving rise to the discrimination claim.  *See, e.g., Kercado-Clymer v. City of Amsterdam*, 370 Fed.Appx. 238, 242 n. 1 (2d Cir. 2010) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).  This liability is premised on section 296(6) of the NYHRL, which provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."  N.Y. Exec. Law § 296(6).  "There is, however, a requirement that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor."  *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999).  In the absence of any genuine issues of fact precluding summary judgment in favor of Erie 2 BOCES on plaintiff's ADEA claim, no reasonable jury could find in plaintiff's favor on her age discrimination claims against individual board members based on the NYHRL.

For these reasons, the court finds that plaintiff has failed to sustain her burden to produce evidence sufficient to establish a *prima facie* case of age discrimination against any of the defendants named in the amended complaint.  Accordingly, defendants are entitled to summary judgment as a matter of law dismissing plaintiff's age discrimination claims.

## IV.    Retaliation

The ADEA's anti-retaliation provisions make it "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this [Act]."  29 U.S.C. § 623(d).[5]  To establish a *prima facie* case of retaliation under this section, plaintiff must demonstrate that: (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  *See Kessler v. Westchester County Dep't of Social Services*, 461 F.3d 199, 204 (2d Cir. 2006); *Collins v. New York Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002).

Plaintiff's retaliation claim against Erie 2 BOCES, encompassed in Causes of Action Five and Eight, centers on her contention that the November 2007 offer of employment in the UPK program, conditioned upon signing the Settlement Agreement Release and Waiver, was retaliatory *per se*.  Plaintiff cites *E.E.O.C. v. Lockheed Martin Corp.*, 444 F.

---

[5]By it terms, section 623(d) prohibits retaliation by employers.  As discussed above with respect to plaintiff's claims under the ADEA's anti-discrimination provisions, plaintiff was employed by Erie 2 BOCES, not by the component school districts, and her retaliation claims must therefore be dismissed as against those defendants.

Supp. 2d 414 (D.Md. 2006), in which the plaintiff's job was eliminated as the result of a merger, and she was offered severance benefits in exchange for signing a release of anti-discrimination claims against the surviving company. She refused to sign, and instead filed an EEOC charge claiming retaliation. The district court found that the release was "facially retaliatory" because it "interfere[d] with the public interest in EEOC enforcement of the ADEA" by conditioning receipt of severance benefits on a waiver of the right to file an EEOC charge. *Lockheed Martin*, 444 F. Supp. 2d at 421. In reaching this conclusion as a matter of first impression in the Fourth Circuit, the district court relied heavily on *EEOC v. SunDance Rehab. Corp.*, 328 F. Supp. 2d 826 (N.D.Ohio 2004). In *SunDance*, the district court found that an employer's severance policy, which conditioned severance pay for reduction in force on the terminated employee's signing a separation agreement containing a waiver of the right to file an EEOC charge, was facially retaliatory in violation of the anti-retaliation provisions of the federal employment discrimination laws. *Id.* at 838. However, the Sixth Circuit reversed on this ground, finding that the employer's "mere offer" of the separation agreement did not amount to "facial retaliation . . . ." *E.E.O.C. v. SunDance Rehabilitation Corp.*, 466 F.3d 490, 500-01 (6th Cir. 2006). The circuit court stated as follows:

> [T]he employees . . . have not been deprived of anything by the offering of the Separation Agreement. Those who choose to accept it are better off, by receiving a benefit that was not "part and parcel of the employment relationship" . . . . Those employees who reject the agreement obviously do not give up any rights. And . . . employees may, if they wish, accept the agreement and argue later that parts of it may be unenforceable under existing or expanded precedent. Under these circumstances, simply offering the Agreement is not facially discriminatory. Accordingly we reject the EEOC's argument that [the employer]'s Separation Agreement amounts to a facial violation of the antiretaliation provisions of the equal employment opportunity statutes.

*SunDance*, 466 F.3d at 501 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984)).

The Sixth Circuit's reasoning is persuasive. Clearly, Ms. Quattrone did not give up any rights in rejecting the November 2007 offer of settlement, as evidenced by the two subsequent "unconditional" offers of employment in December 2007 and June 2008. She refused those offers as well, choosing instead to pursue her ADEA rights by filing charges with the EEOC and then suing in federal court.

Furthermore, Congress amended Section 626 of the ADEA by enacting the Older Workers Benefit Protection Act of 1990 ("OWBPA"), which "is designed to protect the rights and benefits of older workers" and "governs the effect under federal law of waivers or releases on ADEA claims . . . ." *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998). The OWBPA provides, among other things, that "[a]n individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary," and defines the minimum requirements for determining what is a knowing and voluntary waiver. 29 U.S.C. § 626(f)(1). As this statutory language makes clear, an offer of an employment benefit conditioned upon waiver of ADEA rights is not retaliatory *per se*. Rather:

> The OWBPA neither encourages nor discourages settlements and it does not entitle employees to the best possible separation agreement in exchange for the waiver of their ADEA rights. The OWBPA does not require an employer to make a settlement offer. If the employer does not offer a settlement, or if the employee rejects or the employer revokes an offered agreement prior to its acceptance, then the OWBPA is not violated, because the employee has not waived any claims under the ADEA. It is not for the courts to amend the OWBPA to include requirements that Congress has not placed in the statute.

*Ellison v. Premier Salons Intern., Inc.*, 164 F.3d 1111, 1115 (8th Cir. 1999).

Based on this analysis, the court finds that plaintiff has failed to come forward with evidence sufficient to establish a causal connection between the exercise of (or refusal to

waive) her ADEA rights and any adverse employment action resulting from a failure on the part of Erie 2 BOCES to reinstate her to a teaching position for which she was qualified. Accordingly, no reasonable jury could find in favor of plaintiff on her retaliation claim, and defendants are entitled to summary judgment dismissing Causes of Action Five and Eight.

## V.    42 U.S.C. § 1983

In Causes of Action Nine through Twelve of the amended complaint, plaintiff claims that defendants' conduct deprived her of her constitutional rights, subjecting defendants to liability under 42 U.S.C. § 1983.[6]  In its prior order granting plaintiff leave to amend the complaint (and as it is required to do in considering the issues raised by the pleadings), this court "broadly construed" plaintiff's  allegations to encompass claims for deprivation of a constitutionally protected property interest without due process in violation of the Fourteenth Amendment, and retaliation for expressing matters of public concern in violation of the First Amendment.  *See Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Co-op. Educ. Services*, 2011 WL 294496, at *1 (W.D.N.Y. Jan. 27, 2011).

---

[6]Section 1983 itself creates no substantive rights; it provides only a procedure for securing redress for the deprivation of rights established elsewhere.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Morris-Hayes v. Board of Educ. of Chester Union Free School Dist.*, 423 F.3d 153, 159 (2d Cir. 2005).  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . .  subjects, or causes to be subjected, any citizen of the United States . . .  to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

### 1.    Due Process

Somewhat more specifically, plaintiff claims that defendants' failure to reinstate her to her tenured teaching position without notice or opportunity to be heard deprived her of a constitutionally protected property interest without due process of law.  *See* Item 54, ¶¶ 57-62.  Under New York law, "the concept of tenure in the teaching profession does not require a hearing when the teacher's services are terminated because of the abolishment of her position."  *Banigo v. Bd. of Ed. of Roosevelt Union Free School Dist.*, 2009 WL 577974, at *9  (E.D.N.Y. Mar. 4, 2009) (citing *Mitchell v. Bd. of Educ. of the Great Neck Pub. Sch.*, 40 N.Y.2d 904, 905(1976)).  Thus, plaintiff was not entitled to a hearing prior to BOCES' discontinuation of her position as a result of the component districts' withdrawal from the gifted and talented program.   Under such circumstances, the courts have repeatedly held that there is no due process violation, and thus no available § 1983 action, when the employee has access to an adequate state post-deprivation remedy, *see, e.g., Zinermon v. Burch*, 494 U.S. 113, 132 (1990); *Hudson v. Palmer*, 468 U.S. 517, 531 (1984), and the Second Circuit has found New York's CPLR Article 78 review to be "a perfectly adequate post-deprivation remedy" in the context of employment termination. *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996), *cert. dismissed*, 521 U.S. 1140 (1997).

As discussed above, upon discontinuation of her position with Erie 2 BOCES, plaintiff was afforded a full and fair opportunity for administrative review of her assertion of tenure rights by the Commissioner of Education, pursuant to the procedures authorized by state education law, and state court judicial review of the administrative ruling, pursuant

to the procedures authorized by CPLR Article 78.   Accordingly, plaintiff can assert no actionable claim for denial of due process under section 1983.

## 2.   First Amendment Retaliation

As mentioned, the court has broadly construed the factual allegations underlying plaintiff's section 1983 cause of action to include a claim that Erie 2 BOCES failed to reinstate plaintiff in retaliation for expressing matters of public concern, in violation of the First Amendment.   Somewhat more specifically, plaintiff alleges that BOCES retaliated against her for expressing matters of public concern during her administrative proceeding and Article 78 review (*see* Item 54 at ¶ 38), and for  participating in union activities related to her claim that BOCES breached the collective bargaining agreement (*see id.* at ¶¶ 41-42).[7]

To state a *prima facie* case of First Amendment retaliation under Section 1983, plaintiff must demonstrate that: (1) her speech was constitutionally protected; (2) she suffered an adverse employment action; and (3) "a causal connection exists between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination."  *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004) (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)).  Plaintiff contends that, as a public employee, her assertion of tenure rights during her administrative and state court litigation, as well as during her discussions with her union

---

[7]The court also construed plaintiff's First Amendment claim to include retaliation for refusing to sign the waiver and release as a condition precedent to reinstatement.  So construed, this claim is indistinguishable from the retaliation claim discussed in § IV of this order, and will not be addressed here a second time.

about her rights under the collective bargaining agreement, involve constitutionally protected speech touching on matters of public concern.

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir.) (citing *Connick v. Myers*, 461 U.S. 138, 147-48 & n. 7 (1983)), *cert. denied*, 528 U.S. 823 (1999). "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (quoting *Lewis*, 165 F.3d at 163-64)); *see also Blum v. Schlegel*, 18 F.3d 1005, 1012 (2d Cir. 1994) (fact that public employee's speech touches on matters of public concern "will not render that speech protected where the employee's motive for the speech is private and personal").

Upon review of the record in this case, the court finds no evidence to suggest that the matters addressed by plaintiff in her administrative and Article 78 proceedings, or in her discussions with the union, touched upon matters other than her personal tenure rights as a BOCES employee whose position was discontinued due to the component school districts' withdrawal from the BOCES program she serviced. Rather, the record reveals that plaintiff's efforts were at all times clearly calculated "to remedy grievances relating to h[er] employment situation, not to draw attention to issues of interest to the community." *Storman v. Klein*, 2009 WL 1035964, at *21 (S.D.N.Y. Apr. 20, 2009). The personal nature of these efforts is further reflected by the relief sought in the *ad damnum* clause of the

-25-

amended complaint, namely, reinstatement to her position and compensatory damages. *See Ruotolo*, 514 F.3d at 190 ("Because Ruotolo's lawsuit concerns essentially personal grievances and the relief he seeks is for himself alone, the lawsuit is not speech on a matter of public concern and cannot sustain a First Amendment retaliation claim.").

Based on this record, the court finds that plaintiff has failed to establish a *prima facie* case of First Amendment retaliation. Accordingly, no reasonable jury could find in plaintiff's favor on any of her claims for deprivation of constitutional rights actionable under 42 U.S.C. § 1983, and defendants are entitled to summary judgment dismissing Causes of Action Nine through Twelve.

## VI.   Breach of the Collective Bargaining Agreement

In the Fourteenth Cause of Action of the amended complaint, plaintiff contends that Erie 2 BOCES breached the collective bargaining agreement with the TCBEA when it improperly posted the UPK position outside of her bargaining unit. *See* Item 54, ¶¶ 53-55. Defendants move to dismiss this cause of action based on plaintiff's failure to pursue the detailed three-stage grievance procedures set forth at Article 4 of the collective bargaining agreement."

As this court recognized in ruling on plaintiff's motion to amend, New York law requires that when the collective bargaining agreement between the employer and the union contains bargained-for grievance procedures, an employee subject to the agreement may not sue the employer directly for breach of the agreement's provisions but must proceed in accordance with the grievance procedures set forth in the contract. *See Quattrone*, 2011 WL 294496, at *8 (citing *Matter of Board of Educ., Commack Union Free*

*School Dist. v. Ambach*, 70 N.Y.2d 501, 508 (1987), *cert. denied sub nom. Margolin v. Board of Educ.*, 485 U.S. 1034 (1988); *Cummings v. Board of Educ. of Sharon Springs Cent. School Dist.*, 874 N.Y.S.2d 614, 615-16 (App. Div. 2009)).  As cogently expressed by the New York Court of Appeals in the *Commack Union* case, there are several important policy reasons for limiting plaintiff to the contractual grievance procedures, which have long been recognized as "serving the interests of all parties involved" in the collective bargaining process.  *Commack Union*, 70 N.Y.2d at 509.

> Grievance procedures . . . enable the union to participate in administering the contract it negotiated; they aid the employer by channeling grievances into one forum providing one set of remedies; and they permit efficient protection of employee rights.  They are Congress' "preferred method for settling disputes and stabilizing the 'common law' of the plant."  Allowing individual employees to circumvent the grievance procedure in favor of other remedies as a general matter would impair those interests, deprive the parties of the opportunity to establish a uniform and exclusive method for orderly settlement of employee grievances, and "inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements."

*Id.* (quoting *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965) (other internal quotation marks and citations omitted).  Thus, an employee may sue her employer directly for breach of the collective bargaining agreement only if the agreement grants the employee that right, or if the employee can show that the union breached its duty of fair representation.  *Id.* at 508; *see also Tomlinson v. Board of Educ. of Lakeland Cent. School Dist. of Shrub Oak*, 636 N.Y.S.2d 855, 856 (App. Div.), *leave to appeal denied*, 88 N.Y.2d 808 (1996).  In order to establish a breach of the duty of fair representation, the employee must show that the union's conduct was arbitrary, discriminatory, or in bad faith.  *See Lundgren v. Kaufman Astoria Studios, Inc.*, 690 N.Y.S.2d 609, 610 (App. Div. 1999).

In granting leave to amend the complaint, the court found that plaintiff had "at least marginally" set forth facts regarding the union's representation sufficient to allow her to proceed on her claim for breach of the collective bargaining agreement, notwithstanding her undisputed failure to exhaust the grievance procedures. *Quattrone*, 2011 WL 294496, at *8. However, after ample opportunity for further development of the record, plaintiff has come forward with no proffer of evidence tending to show that the union's conduct in negotiating a compromised offer of employment was somehow arbitrary, discriminatory, or carried out in bad faith. Indeed, plaintiff did not even avail herself of the opportunity to respond to the legal arguments raised by defendants with respect to this claim.

In any event, the court's review of the record on summary judgment reveals that plaintiff's union representatives vigorously advocated on her behalf in reaching a favorable resolution with BOCES regarding an offer of a position in the UPK program. Plaintiff declined the offer, even when made without any waiver and release conditions, and elected not to pursue a grievance under the CBA. Based on this record, no reasonable jury could find that the union breached its duty of fair representation, and plaintiff cannot pursue her claim for breach of collective bargaining agreement in this court.

Accordingly, defendants are entitled to summary judgment as a matter of law dismissing the Fourteenth Cause of Action.

## VII.    Supplemental Jurisdiction

Finally, since the court "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over any remaining claims for relief regarding plaintiff's employment rights

under state law.  The federal courts have consistently held that "[t]his is the preferred course when all federal claims have been dismissed pre-trial . . . ."  *87th Street Owners Corp. v. Carnegie-Hill-87th Street Corp.*, 251 F. Supp. 2d 1215, 1222 (S.D.N.Y. 2002); *see also Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) (citing cases).  Declining supplemental jurisdiction over remaining state law claims is particularly appropriate here, where the plaintiff had a full and fair opportunity to litigate the issue of her employment rights under New York State Education Law on administrative and Article 78 review, and the court has determined that the state court's judgment is entitled to collateral estoppel effect.

## **CONCLUSION**

For the foregoing reasons, defendants' summary judgment motion (Item 62) is granted, and the amended complaint is dismissed in its entirety.

The Clerk of the Court is directed to enter judgment in favor of defendants.  The parties shall bear their own costs.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated: October 11       , 2011
p:\pending\2008\08-367.sept22.2011